1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL CONERLY-ROTHWELL,

Petitioner,

v.

KAY WALTER,

Respondent.

Case No.  C05-5098RBL

REPORT AND
RECOMMENDATION

Noted for February 3, 2006

Petitioner is in the custody of the Department of Corrections (Department or DOC) pursuant to a 2001 state conviction for one count unlawful manufacturing of a controlled substance - methamphetamine, two counts unlawful possession of pseudoephedrine with intent to manufacture methamphetamine, and three counts second degree unlawful possession of a firearm.  On February 16, 2001, the Pierce County Superior Court (the Honorable Kitty-Ann Vandoorninck) sentenced him to 120 months confinement.  His possible early release date is June 2, 2007.

The petitioner, acting *pro se*, in this action is seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  This case has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636 (b)(1)(B) and Local Magistrates' Rules MJR 3 and MJR 4.  Respondent has answered the petition and has attached or filed the relevant state court records.  Petitioner responded to the information and arguments provided by respondent.   Thus, the case is ripe for review and a decision by the Court.

FACTUAL AND PROCEDURAL HISTORY

The Washington Court of Appeals summarized the facts in Conerly-Rothwell's case as follows:

I. Parole Violations

In March 1996, after Michael Conerly-Rothwell pleaded guilty to second degree possession of stolen property, attempting to elude a pursuing police vehicle, and taking a motor vehicle without permission, the trial court sentenced him to 120 days confinement to be followed by 12 months of community supervision.1 He served 12 months of community supervision, which ended in March 1997; at this point, DOC placed him on monetary supervision only until he completed payment of court-ordered restitution. [Footnote omitted]  As of August 2000, Conerly-Rothwell had paid nothing toward his court-ordered restitution obligation.

A few days before August 8, 2000, Tacoma Police Department (TPD) officers told Community Corrections Officer (CCO) Mike Poston that Conerly-Rothwell was causing trouble in the community. [Footnote Omitted]   After speaking with Conerly-Rothwell's community supervision officer at the OMMU [footnote omitted] office, Poston decided to contact Conerly-Rothwell about his failure to pay his legal financial obligations, and his possible involvement in a neighborhood drug-dealer robbery. Poston asked TPD Officers Shawn Stringer and Donald Walkinshaw to accompany him for security purposes.

On August 8, Poston and the officers went to Conerly-Rothwell's house. The officers knocked on the front door, but there was no answer. While waiting for someone to answer the door, Officer Stringer walked around the house. At the bottom of the stairs, he noticed a pressurized cylinder. On the back porch at the bottom of the stairs, he saw a pitcher commonly used in the extraction of ephedrine during methamphetamine production. He also saw coffee filters and paper towels. On the deck, he saw a gas can with an attached tube, and at the back of the house, he saw a vent fan. Walking around the house while waiting for someone to answer the door, Poston noticed a propane tank on the side of the house.

As Officer Stringer walked around the house, he saw another door at the bottom of the large stairwell. He approached it and knocked on the door but received no answer. He then went back up the stairs and knocked again on the front door. Two females answered the door; they were also on parole and one, Nikki Miller, was in violation. CCO Poston and the officers entered the house to search for Conerly-Rothwell. During the search of the house, Officer Stringer encountered items related to the production of methamphetamine and ordered everyone out of the house.

Later that afternoon, Officer Stringer obtained a search warrant based on the contraband he had seen at Conerly-Rothwell's residence. Pursuant to the search warrant, Tacoma Police Officers removed several items related to methamphetamine production and some documents that had Conerly-Rothwell's name on them.

II. Procedure

A. Suppression Hearing

In his motion to suppress evidence Conerly-Rothwell challenged the issuance of the search warrant for his residence, arguing that because he was on monetary supervision only, there was no basis for behavior supervision, including drug-use oversight. The State countered that even if CCO Poston did not have authority to enter Conerly-Rothwell's residence based on community placement financial violations, the presence of two females who were also on parole, (at least one of whom lived there), [footnote omitted] independently justified CCO Poston's entry to determine whether they were violating conditions of their active supervision.

The trial court ruled that Conerly-Rothwell was under Department of Corrections

(DOC) supervision, even though only for financial reasons, and, therefore, DOC had a right to check on Conerly-Rothwell because he was in violation of his release conditions.

B. Trial Continuances and Requests for New Counsel

The State charged Conerly-Rothwell with eight drug-related crimes. He was arraigned on August 21, 2000, and remained in custody. Trial was set for October 18. On October 18, defense counsel asked for a five-day extension because he was in trial on another case, which he believed would conclude within a week. The court granted his request. Conerly-Rothwell did not waive his rights to a speedy trial at this time nor did he object to the motion.

On October 25, defense counsel again asked for a five-day extension because his trial had not concluded within the week as expected. The court again granted his motion for continuance. Conerly-Rothwell objected to the continuance, did not waive his speedy trial rights, and asked to fire his court-appointed defense attorney. He contended that his counsel was too involved with his other cases and could not represent him competently. The court denied his request, and reset the trial for November 1.

On November 1, defense counsel sought a third continuance because he was still in trial and needed time to prepare for Conerly-Rothwell's trial. The court again granted the continuance, resetting the trial for January 22, 2001. This time, Conerly-Rothwell waived his speedy trial rights.

On January 22, defense counsel requested another five-day extension in order to prepare for trial. The court denied the motion but recessed the case until January 25, so that defense counsel could prepare. At that time, Conerly-Rothwell again asked to substitute counsel, explaining that his family had hired a private firm to represent him. Although a representative from that firm was present, the lawyer who was to be Conerly-Rothwell's new trial counsel was not. And no one asserted to the trial court that new counsel was ready to try the case immediately or how long it might take him to prepare. Conerly-Rothwell's current counsel explained that he would be ready to begin trial within the next few days. The trial court denied the motion, reasoning that Conerly-Rothwell had not shown good and sufficient reason for the substitution.

The jury convicted Conerly-Rothwell on six of the eight counts; he appeals.

Respondent's Exhibit 3, State Court of Appeals' Unpublished Opinion, at 1-5, filed with materials in support of respondent's Answer to the petition..

Following his convictions, petitioner appealed to the Washington Court of Appeals.  The court denied his appeal in an unpublished opinion.  Conerly-Rothwell moved for reconsideration, which the state court denied..  Conerly-Rothwell petitioned for review in the state's highest court.  The Washington Supreme Court denied review on July 8, 2003, and the Washington Court of Appeals issued its mandate on July 21, 2003.

On June 17, 2004, Conerly-Rothwell filed a personal restraint petition with the Washington Court of Appeals.  The Washington Court of Appeals denied the petition on July 26, 2004.  Conerly-Rothwell did not file a motion for discretionary review in the state's highest court. The Washington Court of Appeals

1    issued a certificate of finality on February 14, 2005.

2         On February 1, 2005, Petitioner filed his federal habeas corpus petition with this Court, raising the

3    following four issues:

4         1. Ineffective assistance of counsel. Failure to confer, subpoena, or investigate.

5         2. Conviction obtained by use of evidence gained pursuant to an unconstitutional search and

6    seizure.

7         3. Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

8         4. Conviction obtained in trial started after the sixty-day speedy trial period.

9                         AN EVIDENTIARY HEARING IS NOT REQUIRED

10        In its Order Directing Service and Response, respondent was directed to state in his response

11   whether or not an evidentiary hearing was necessary.  Accordingly, respondent has informed the court that

12   he does not think an evidentiary hearing is required.  The function of an evidentiary hearing is to try issues

13   of fact; such a hearing is unnecessary when only issues of law are raised.  *See e.g.* Yeaman v. United

14   States, 326 F.2d 293 (9th Cir. 1963).  After careful review of the record, the undersigned judge concludes

15   that there are no relevant factual disputes to resolve in order for the Court to render its decision in this

16   case.  Accordingly, an evidentiary hearing was not necessary.

17                                  DISCUSSION

18   A.    STANDARD OF REVIEW

19        Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), a federal court "shall

20   entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the

21   judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws

22   or treaties of the United States."  28 U.S.C. § 2254(a).  A federal court shall not grant the application for

23   any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:

24   "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

25   established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a

26   decision that was based on an unreasonable determination of the facts in light of the evidence presented in

27   the State court proceeding."  28 U.S.C. § 2254(d).

28

1    *B.*    PETITION WAS NOT FILED WITHIN THE ONE-YEAR STATUTE OF LIMITATIONS

2          Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), habeas corpus

3    petitions are subject to a one-year statute of limitations. 28 U.S.C. § 2244(d).  It states: "1-year period of

4    limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the

5    judgment of a State court. The limitation period shall run from the latest of -- (A) the date on which the

6    judgment became final by the conclusion of direct review or the expiration of the time for seeking such

7    review . . . ."   The statute further declares, "[T]he time during which a properly filed application for State

8    post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall

9    not be counted toward any period of limitation under this subsection" (emphasis added).  Where a habeas

10   petitioner sought direct review by the highest state court but did not file a petition for a writ of certiorari in

11   the United States Supreme Court, the AEDPA one-year limitations period for seeking federal habeas

12   review begins to run not on the date the highest state court entered judgment, but on the date the time for

13   seeking certiorari expires. <u>Bowen v. Roe</u>, 188 F.3d 1157, 1159 (9th Cir. 1999).  The time period for

14   seeking certiorari is ninety days, according to the Supreme Court Rule 13. <u>Id</u>.  A properly filed state court

15   application for post-sentence relief tolls the statute of limitations for the time the application remains

16   pending in state court. See 28 U.S.C. § 2244(d)(2); <u>Pace v. DiGuglielmo</u>, __ U.S. __, 125 S. Ct. 1807,

17   1810 (2005) (holding that untimely state court petition for post-sentence relief did not toll federal statute

18   of limitations because it did not constitute "properly filed" petition).

19         The federal time bar can be tolled 'if "extraordinary circumstances" beyond a prisoner's control

20   make it impossible to file a petition on time.'" <u>Calderon v. United States Dist. Court (Kelly)</u>, 163 F.3d 530,

21   541 (9th Cir. 1998) (*en banc*), *cert. denied*, 119 S. Ct. 1377 (1999) (quoting <u>Calderon v. United States</u>

22   <u>Dist. Court (Beeler)</u>, 128 F.3d 1283, 1288-89 (9th Cir. 1997), *cert. denied*, 118 S. Ct. 899 (1998)).

23   Equitable tolling is appropriate where external forces, rather than the petitioner's lack of diligence, account

24   for the failure to file a timely petition. <u>Miles v. Prunty</u>, 187 F.3d 1104, 1107 (9th Cir. 1999).

25         Here, the one-year statute of limitations began to run on October 7, 2003, which is 90 days

26   following the Washington Supreme Court's denied review of his direct appeal (July 8, 2003).   Time ran

27   for 247 days until it was tolled on June 10, 2004, when petitioner filed his state personal restraint petition

28   with the Washington Court of Appeals. After the Washington Court of Appeals dismissed the petition on

July 26, 2004, the federal statute of limitations began to run again on July 27, 2004, and it ran for the remaining 118 days, expiring on November 21, 2004.  On March 24, 2005, approximately 123 days late, Mr. Conerly-Rothwell filed the instant federal habeas corpus petition.  Therefore, Conerly-Rothwell's federal habeas petition is untimely under the federal statute of limitations, 28 U.S.C. § 2244(d).

The court has considered Mr. Conerly-Rothwell argument (in his pleading with the title "Motion to Amend Petition" (Doc. 21)) that this matter should not be time barred due to equitable tolling.  Petitioner argues that on August 13, 2004, he was placed in administrative segregation pending a transfer to another prison facility and denied all of his legal materials until September 16, 2004.  Petitioner argues that even though he was no longer in administrative segregation after September 16, 2004,  he did not obtain all his legal materials and property until February 10, 2005.   Petitioner argues "[i]t was impossible for petitioner to file his Habeas Corpus Petition without having any of the records of the previous actions or state court transcripts" and asks the court to toll the statute of limitations from August 13, 2004 through February 10, 2004.

After reviewing the matter, the court does not find petitioner's circumstances extraordinarily sufficient to toll the statute of limitations.  Whether a petitioner is entitled to equitable tolling is a fact-specific inquiry.  Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc). To receive equitable tolling, a petitioner at the very least must show the extraordinary circumstances "were the but-for and proximate cause of his untimeliness." Allen v. Lewis, 255 F.3d 798, 800 (9th Cir. 2001) (loss of legal materials during 27 day period did not warrant equitable tolling where petitioner did not show the loss prevented filing a petition during the remaining limitations period).  Mr. Conerly-Rothwell fails to show he is entitled to equitable tolling. He does not demonstrate any extraordinary circumstance that prevented him from filing a timely habeas corpus petition prior to August 13, 2004, when he was placed in administrative segregation.  He does not demonstrate any extraordinary circumstances (i.e. that he was denied all access to the court while he was in segregation) which prevented him from filing a petition while he was in administrative segregation.  He does not demonstrate any extraordinary circumstances which prevented him from filing his habeas corpus petition after his transfer to the Washington State Penitentiary was complete.  The court notes that full, or even limited access to petitioner's legal materials is not an extraordinary situation which would prevent a petitioner from filing his or her petition within a timely

manner.  Petitioner was not prevented from filing a petition with the court simply declaring that his

knowledge and recollection of all necessary facts or arguments may not be complete in order to meet the

one-year statue of limitations.  Similarly. when a petitioner is faced with the need to fully exhaust all

remedies to proceed with a habeas matter, the petitioner needs to file a petition with the federal court prior

to all issues being fully exhausted.  In such a situation the court may use a "stay-and-abeyance" procedure

in which the court may stay the matter pending future amendment or additional facts being added to the

petition.  Pliler v. Ford, --- U.S. at ----, 124 S.Ct. at 2445 (*citing* Calderon v. United States District Court

(Taylor), 134 F.3d 981, 988 (9th Cir.1998)).  This procedure assumes special importance in light of

AEDPA's one-year statute of limitations, and it advances our policy of deciding cases on the merits, rather

than on procedural grounds.  James v. Pliler, 269 F.3d 1124, 1126 (9th Cir.2001).

In sum, petitioner's arguments for equitable tolling fall short of the extraordinary circumstances

standard discussed above.  The court should deny the petition as time barred.   Alternatively, the court

should find three of petitioner's four claims unexhausted and procedurally barred and the remaining claim

does not warrant habeas relief.

*C.     EXHAUSTION OF CLAIMS*

State remedies must first be exhausted on all issues raised in a federal habeas corpus petition.  Rose

v. Lundy, 455 U.S. 509 (1982); 28 U.S.C. §2254(b), (c).  Exhaustion must be shown either by providing

the highest state court with the opportunity to rule on the merits of the claim or by showing that no state

remedy remains available.  Batchelor v. Cupp, 693 F.2d 859 (9th Cir. 1982), cert. denied, 463 U.S. 1212

(1983).  The exhaustion requirement is a matter of comity, intended to afford the state courts "the first

opportunity to remedy a constitutional violation."  Sweet v. Cupp, 640 F.2d 233, 236 (9th Cir. 1981).  A

federal habeas petitioner must therefore provide the state courts with a fair opportunity to apply controlling

legal principles to the facts bearing on his constitutional claim.  Picard v. Connor, 404 U.S. 270 (1971);

Anderson v. Harless, 459 U.S. 4 (1982).

As noted above, petition presents four claims in his petition for habeas corpus.  Only one claim --

petitioner's search and seizure claim -- was properly presented to both the Washington Supreme Court and

Court of Appeals.  Petitioner failed to exhaust his other three claims.  He did not raise his unlawful arrest

claim in state court, he raised his ineffective assistance of counsel claim only in the Washington Court of

Appeals, and his speedy trial claim is a state law claim only.  In fact, the only brief he submitted to the Washington Supreme Court was a petition for review in his direct appeal. It did not present his ineffective assistance claim or his unlawful arrest claim. And although it presented his speedy trial claim with a citation to federal law, he did not cite federal law when he presented a speedy trial claim in his briefs in the Washington Court of Appeals.  Because of the state statute of limitations and the state rule prohibiting successive petitions, these unexhausted claims are procedurally barred in state court under RCW 10.73.090, 10.73.140 and RAP 16.4(d). Consequently, petitioner would not be allowed to exhaust his federal claims in state court.  Because his claims are procedurally barred under Washington law, the claims are not cognizable in a federal habeas corpus petition absent a showing of cause and prejudice or actual innocence.

Petitioner has not shown cause and prejudice or any extraneous circumstance that prevented him from raising his three claims in one full round of appeal in state court.  The court notes that petitioner raised the speedy trial and ineffective assistance claims in previous state court briefs, but he did not raise them as federal constitutional claims in both the state court of appeals and the state supreme court.  The court further finds petitioner has not shown or argued actual innocence and has failed to present any new evidence demonstrating that it is more likely than not that no reasonable juror would have convicted him in the light of new evidence.  Accordingly, petitioner's unexhausted claims are procedurally barred under an independent and adequate state law, and they are not cognizable in federal court.

D.    *SEARCH AND SEIZURE*

In his petition, Mr. Conerly-Rothwell argues his conviction was obtained by the use of evidence gains pursuant to an unconstitutional search and seizure of evidence.  He explained:

> In the 1996 case that established probation, the condition to be subject to warrantless searches was not implemented in the probation Contract.  Officers illegally entered the house then secured a search warrant.  A probationer visiting the residence did not give the officers the right to check probation compliance by searching this residence.  Since the Petitioner was never subject to warrantless searches, the original entry to secure a warrant was unreasonable and all evidence should have been suppressed.

Petition at 5.

"The Fourth Amendment assures the `right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.'" Stone v. Powell, 428 U.S. 465, 482 (1976) (quoting the U.S. Constitution).  In order to give effect to the Fourth Amendment's protection

against unreasonable searches and seizures, court's suppress or exclude from trial any evidence unlawfully

obtained.  *See* <u>Stone v. Powell</u>, *supra,* at 482-489.  Significantly, the Supreme Court, in <u>Powell</u>, stated:

> We hold, therefore, that <u>where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief</u> on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. [footnote omitted].

<u>Stone v. Powell</u>, 428 U.S. at 482, (emphasis added).  Here, according to the Supreme Court's decision in

<u>Powell</u>, the only relevant inquiry for the court to engage in is to determine whether or not petitioner was

provided an opportunity to fully and fairly litigate his claim at the state trial court level.

As noted by the State Court of Appeals above, the issue of an illegal search and seizure and

suppression was addressed by the trial court judge.   The motion to suppress commenced on Thursday,

January 25, 2001 and concluded on the following Monday, January 29, 2001. (Exhibit 19 through Exhibit

21).   After hearing from several witnesses and argument, the state trial judge made the following ruling:

> I'm going to deny the motion to suppress.  I think it's an interesting issue.  Clearly the cases deal with individuals who are on active status, and I don't know if that's a term of art, "active status."
>
> I think we all think of it as having additional conditions, but clearly, he was on supervision. The supervision was active in terms of the Department of Corrections.  Community corrections was still obligated to monitor the legal financial obligations.
>
> Mr. Conerly-Rothwell had not complied with any of the conditions, either the first 12 months or years later, and he was in violation.  I think that the Department of Corrections has the legal right and the obligation and the duty to check up on people who are on probation status.  And clearly, with more recent civil lawsuits of the last year, in which the Department of Corrections is held to a duty to protect the community, I think they certainly have the duty to follow through and investigate, and they had the legal right to be present at the home.
>
> They have a legal right to be present in the back yard or the side door, to try to gain entry that way, or to make sure that nobody left through the back door.  I think that's pretty typical procedure.  So I'll deny the motion to suppress.

Exhibit 21 at 150-151.

Clearly, at trial petitioner had a full and fair opportunity to litigate his suppression claim.

Accordingly, the Court should dismiss petitioner's Fourth Amendment claim.

<u>CONCLUSION</u>

Based on the foregoing discussion, the petition for a writ of habeas corpus should be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall

have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6.  Failure

to file objections will result in a waiver of those objections for purposes of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **February 3, 2006**, as noted in the caption.

DATED this 9th day of January, 2006.

*/s/ J. Kelley Arnold*
J. Kelley Arnold
U.S. Magistrate Judge

REPORT AND RECOMMENDATION
Page - 10